Dale M. Cendali (S.B.N. 1969070)
dale.cendali@kirkland.com
Joshua L. Simmons (admitted *pro hac vice*)
joshua.simmons@kirkland.com
Ari Lipsitz (admitted *pro hac vice*)
ari.lipsitz@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
United States
Telephone: +1 212 446 4800
Facsimile: +1 212 446 4900

Diana M. Torres (S.B.N. 162284)
diana.torres@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
United States
Telephone: +1 310 552 4200
Facsimile: +1 310 552 5900

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

TAKE-TWO INTERACTIVE SOFTWARE, INC. and 2K GAMES, INC.

           Plaintiffs,

    v.

BRANDON SIMS,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.: 4:20-cv-4441-JSW

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

Date: September 4, 2020
Time: 9:00 a.m.
Location: 1301 Clay Street
         Oakland, CA 94612
         Courtroom 5, 2nd Floor
Telephonic Hearing:
         1-888-684-8852
         access code 8583698#.

Judge: Jeffrey S. White

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION/STATEMENT OF ISSUES TO BE DECIDED.........................1

II.   STATEMENT OF RELEVANT FACTS ........................................................2

III.  ARGUMENT ..................................................................................................3

    A.    This Court Has Personal Jurisdiction over Defendant..................................4

    B.    Venue Is Proper In this District and a Discretionary Transfer Is Not
          Appropriate.................................................................................................11

    C.    The Parties' Controversy Is Justiciable ........................................................15

IV.   CONCLUSION ..............................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*,
125 F. Supp. 3d 945 (N.D. Cal. 2015) ................................................................7

*Am. Honda Motor Co. v. Coast Distrib. Sys., Inc.*,
No. 06 Civ. 4752, 2007 WL 47258 (N.D. Cal. Jan. 5, 2007) ..........................17

*Astra Mfg., Inc. v. Jack Rockwell LLC*,
No. 08 Civ. 6153, 2009 WL 10671434 (C.D. Cal. Feb. 11, 2009) ....................8

*Aussie Pet Mobile, Inc. v. Benton*,
No. 09 Civ. 1407, 2010 WL 2629556 (C.D. Cal. June 28, 2010) ....................10

*Bacchus Mgmt. Grp., LLC v. Talisker Canyons (WA DAKOTA), LLC*,
No. 11 Civ. 987, 2011 WL 13243723 (N.D. Cal. Aug. 2, 2011) ..............9, 10, 13

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
223 F.3d 1082 (9th Cir. 2000) .....................................................................4, 5, 6

*BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*,
No. 19 Civ. 5216, 2020 WL 3893563 (D. Ariz. July 10, 2020) ........................8

*Brayton Purcell LLP v. Recordon & Recordon*,
606 F.3d 1124 (9th Cir. 2010) ..................................................................4, 11, 12

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .........................................................................................7

*Coheso, Inc. v. Can't Live Without It, LLC*,
No. 17 Civ. 3381, 2017 WL 10434396 (N.D. Cal. Dec. 18, 2017) ..................17

*Corp. Inv. Bus. Brokers v. Melcher*,
824 F.2d 786 (9th Cir. 1987) ...........................................................................10

*Do v. Hollins Law, P.C.*,
No. 3:13 Civ. 1322, 2013 WL 3703405 (N.D. Cal. July 12, 2013) ............14, 15

*E. & J. Gallo Winery v. Proximo Spirits, Inc.*,
583 F. App'x 632 (9th Cir. 2014) .....................................................................16

*Elec. Frontier Found. v. Glob. Equity Mgmt. (SA) Pty. Ltd.*,
290 F. Supp 3d 923 (N.D. Cal. 2017) ...............................................................5

**Page(s)**

*Enger v. Allstate Ins. Co.*,
    No. 16 Civ. 136, 2016 WL 10829363 (N.D. Cal. Apr. 5, 2016) ..........................................12

*Eureka Inventions, LLC v. Bestway (USA), Inc.*,
    No. 15 Civ. 701, 2015 WL 3429105 (N.D. Cal. May 27, 2015) ..........................................14

*Facebook, Inc. v. ConnectU LLC*,
    No. 07 Civ. 1389, 2007 WL 2326090 (N.D. Cal. Aug. 13, 2007) ...........................................8

*Flipboard, Inc. v. Amorphous*,
    No. 15 Civ. 3255, 2015 WL 8482258 (N.D. Cal. Dec. 10, 2015) ................................5, 6, 9

*Gilbert v. Bank of Am.*,
    No. 13 Civ. 1171, 2014 WL 4748494 (N.D. Cal. Sept. 23, 2014) (White, J.)....................11

*Groupion LLC v. Groupon, Inc.*,
    No. 11 Civ. 870, 2012 WL 3025711 (N.D. Cal July 24, 2012) ..........................................10

*Groupion, LLC v. Groupon, Inc.*,
    No. 11 Civ. 870, 2012 WL 2054993 (N.D. Cal. June 5, 2012) ....................................6, 7, 9

*Hal Roach Studios v. Richard Feiner & Co.*,
    896 F.2d 1542 (9th Cir. 1990) ...........................................................................2, 15, 16, 17

*Heller v. Cepia, L.L.C.*,
    No. 11 Civ. 1146, 2012 WL 13572 (N.D. Cal. Jan. 4, 2012) (White, J.) ............................11

*Invisible Stripes, LLC v. Virag*,
    No. 09 Civ. 1133, 2009 WL 1992125 (N.D. Cal. July 8, 2009) (White, J.)....................12, 13

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) ...........................................................................................12

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001) ...........................................................................................12

*M.D. Beauty, Inc. v. Dennis F. Gross, M.D., P.C.*,
    No. 03 Civ. 3082, 2003 WL 24056263 (N.D. Cal. Oct. 27, 2003).....................................16

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) .............................................................................................4

*Menken v. Emm*,
    503 F.3d 1050 (9th Cir. 2007) ..................................................................................8, 9, 10

*Pension Plan for Pension Tr. Fund for Operating Eng'rs v. ACME Concrete*,
    No. 12 Civ. 4410, 2012 WL 12899098 (N.D. Cal. Nov. 1, 2012).................................12, 13

*PlayVision Labs, Inc. v. Roberts*,
    No. 12 Civ. 171, 2012 WL 13069775 (N.D. Cal. Aug. 8, 2012) (White, J.).........................7

**Page(s)**

*RHUB Commc'ns, Inc. v. Karon*,
 No. 16 Civ. 6669, 2017 WL 3382339 (N.D. Cal. Aug. 7, 2017) ........................................7

*Richardson v. Kharbouch*,
 No. 19 Civ. 2321, 2020 WL 1445629 (N.D. Ill. Mar. 25, 2020) ..............................6, 11

*Richmond Techs., Inc. v. Aumtech Bus. Sols.*,
 No. 11 Civ. 2460, 2011 WL 2607158 (N.D. Cal. July 1, 2011) ......................................10

*Societe de Conditionnement v. Hunter Eng'g Co.*,
 655 F.2d 938 (9th Cir. 1981) ......................................................................................15, 16

*Wake Up & Ball LLC v. Sony Music Entm't Inc.*,
 119 F. Supp. 3d 944 (D. Ariz. 2015) ...............................................................................6

*Walden v. Fiore*,
 571 U.S. 277 (2014) ...........................................................................................................5

*Way.com, Inc. v. Singh*,
 No. 3:18 Civ. 4819, 2018 WL 6704464 (N.D. Cal. Dec. 20, 2018) ..............................5

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
 433 F.3d 1199 (9th Cir. 2006) ..........................................................................................4

**Statutes**

17 U.S.C. § 106 ...............................................................................................................16

17 U.S.C. § 501 ...............................................................................................................16

28 U.S.C. § 1400 .............................................................................................................11

**Rules**

Fed. R. Civ. P. 12 .............................................................................................................4

**Other Authorities**

General Order No. 72-5 (July 23, 2020) ..........................................................................8

Plaintiffs 2K Games, Inc. ("2K Games") and Take-Two Interactive Software, Inc. ("Take-Two Interactive") (collectively, "Plaintiffs") submit this memorandum in opposition to Defendant Brandon Sims' ("Defendant") motion to dismiss Plaintiffs' Complaint (Dkt. No. 1) ("Complaint") or to transfer this case to the Northern District of Georgia (Dkt. No. 22).

## I. INTRODUCTION/STATEMENT OF ISSUES TO BE DECIDED

Through his motion, Defendant seeks to maintain the cloud that he created over Plaintiffs' popular video game, *NBA 2K19*. Defendant sent a letter to 2K Games in Novato, California asserting that *NBA 2K19* infringed his rights to a dance step, demanding a full accounting of sales, and stating that he would pursue legal and equitable remedies absent an amicable resolution. 2K Games explained that Defendant had no claim because individual dance steps are not protectable and, in any case, Defendant's dance step differs from the celebratory dance in 2K Games' video game. Nevertheless, Defendant doubled down, sending another letter claiming infringement, demanding an accounting, and reserving all rights. 2K Games and its parent company, Take-Two Interactive, brought this suit seeking to clear the cloud that Defendant's unfounded assertion has created over their game. Yet, now that this Court has been asked to resolve the parties' dispute, Defendant seeks to run away.

Defendant's stratagem fails, as each of his bases for dismissal or transfer fail. *First*, he asserts that this Court lacks personal jurisdiction over him. As he admits, however, he sent multiple cease and desist letters to 2K Games in this District and has performed the dance step at the center of this lawsuit in this District as part of a series of live performances that he claims led 2K Games to copy it. As a result, Defendant has purposefully directed activities at California and those activities gave rise to the current lawsuit. Moreover, Defendant has not met his burden of showing a "compelling case" that it would be unreasonable for this Court to exercise jurisdiction. Thus, the Court has specific personal jurisdiction over Defendant.

*Second*, Defendant claims that venue is improper, but venue is proper in copyright cases anywhere that personal jurisdiction has been established. Thus, as this Court has personal jurisdiction over Defendant, venue too is proper. Recognizing this, Defendant requests a discretionary transfer to

the Northern District of Georgia, but as detailed below, none of the interest of justice factors support overruling Plaintiffs' choice of forum.  Thus, Defendant's motion to transfer should be denied.

*Third*, Defendant argues that the parties' dispute is not justiciable because an actual case or controversy does not exist.  Yet, Defendant's own cited case, *Hal Roach Studios v. Richard Feiner & Co.* established the principle that asserting infringement in a cease and desist letter creates a justiciable controversy between the parties.  896 F.2d 1542, 1556 (9th Cir. 1990).  Indeed, the Declaratory Judgment Act is specifically intended for circumstances, like this, where a party seeks to resolve an accusation of infringement.

Accordingly, Plaintiffs respectfully request that this Court deny Defendant's motion.  If, however, this Court questions its jurisdiction, Plaintiffs respectfully request permission to conduct the limited jurisdictional discovery discussed below, *see infra* 11, to determine what additional activities Defendant has directed at California beyond those in which he already has admitted engaging.

## II.    STATEMENT OF RELEVANT FACTS

2K Games is a video game publisher located in Novato, California, within this District.  Compl. ¶ 9; Declaration of Alfredo Brody, dated August 11, 2020 ("Brody Decl.") ¶ 2; Mot. 3.  Among 2K Games' creative works is the well-known basketball simulation video game series *NBA 2K*, including the recent game *NBA 2K19*.  Compl. ¶¶ 15–19; Brody Decl. ¶ 2.  2K Games' offices are located in this District, and its employees who created *NBA 2K* are based in or managed from this District.  Brody Decl. ¶¶ 3–4.  2K Games' development of *NBA 2K19*, including the celebratory dance that is the subject of this action, occurred in this District, and accordingly all evidence concerning the game's development is located in this District.  *Id.* ¶ 3.  Take Two Interactive is 2K Games' parent company.  Compl. ¶ 9.

Defendant asserts that he is a recording artist and performer.  Mot. 2; Compl. ¶ 10.  Through counsel, he sent a cease and desist letter to 2K Games in Novato, California.  Declaration of Bruce B. Siegal (Dkt. No. 22-2) ("Siegal Decl.") Ex. A.  The letter asserted that Defendant owns copyrights to a dance step in a longer work called "Crank That Dance," which Defendant admits he has performed in this District.  Declaration of Brandon Sims (Dkt. No. 22-1) ("Sims Decl.") ¶ 11; Compl. ¶ 14.  Defendant also admits that he has performed the dance step around the country "at live performances

and in music videos" with the rapper Soulja Boy.  Mot. 2; Compl. ¶¶ 14, 21.  Defendant's letter asserted that the dance step was "an essential part of the Soulja Boy performance," accused 2K Games of using the dance step without Defendant's authorization, and stated that such use "violates Mr. Sims's exclusive rights as the copyright owner," and "constitutes copyright infringement."  Siegal Decl. Ex. A, at 1–2.  It also demanded that 2K Games provide a full accounting of all sales of any game or other item containing the celebratory dance and warned that, absent an amicable resolution, Defendant "will take all steps available at law and in equity to protect his exclusive rights under copyright."  *Id.*

2K Games responded to Defendant's letter by explaining that its video game does not infringe any rights held by Defendant because individual dance steps are not copyrightable.  Siegal Decl. Ex. B; Compl. ¶¶ 28–32.  Moreover, Defendant copied his asserted dance step from a prior work, Compl. ¶¶ 25–27, and Defendant's step is different from the celebratory dance in *NBA 2K19.*  Siegal Decl. Ex. B; Compl. ¶¶ 33–36.  Despite 2K Games' letter, Defendant sent another letter, insisting that 2K Games had "created an unauthorized derivative work" and, thus, infringed his copyright.  Siegal Decl. Ex. C, at 2. The letter again asserted that the dance step was an "essential part of the performance" of Soulja Boy's song, and stated that the popularity generated from Defendant's touring with Soulja Boy at "live concert performances" was "unique" and the reason the dance step was "attractive to Take-Two."  *Id.* at 1–2.  In his second letter, as in his first, Defendant sought a full accounting.  He concluded this letter with a reservation of all rights, a thinly-veiled reference to his prior warning that he would pursue "all steps available at law and in equity to protect" his purported rights.

To clear the cloud created by Defendant's assertions, 2K Games and Take Two Interactive filed this lawsuit seeking a declaration of non-infringement.  *See generally* Compl.  Defendant has retained California-based counsel for this litigation, who filed the motion at issue.  *See generally* Mot.

### III.   ARGUMENT

Defendant raises three grounds to avoid this Court's resolution of Plaintiffs' declaratory judgment claim.  As discussed below, each argument fails.

A.    **This Court Has Personal Jurisdiction over Defendant**

On a Rule 12(b)(2) motion for lack of personal jurisdiction, although the plaintiff bears the burden of demonstrating jurisdiction, "the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (reversing personal jurisdiction dismissal).  Moreover, "uncontroverted allegations in plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in plaintiff's favor." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (alterations omitted).

The Ninth Circuit analyzes "specific jurisdiction under a three-prong test." *Mavrix*, 647 F.3d at 1227.  ***First***, as to the purposeful direction prong applied in tort cases, the Ninth Circuit considers whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 1228; *see also Brayton*, 606 F.3d at 1128 (applying same to copyright claims); Mot. 6.  Importantly, the Court must evaluate "all of a defendant's contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206–07 (9th Cir. 2006) (purposeful direction found based on cease and desist letter and threatened enforcement of foreign court order).

Defendant's letters and the admissions in his declaration establish that he purposefully directed his activities at the forum, satisfying the first prong of the test for specific jurisdiction.  Although Defendant tries to downplay the cease and desist letter that he sent to 2K Games in this District, Mot. 6,[1] the Ninth Circuit has held that sending such a letter alleging intellectual property infringement to a California company can, when combined with another California contact, satisfy all of the purposeful direction considerations.  *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th

---

[1]    Defendant's attempt at misdirection by focusing on Take-Two Interactive, instead of 2K Games, Mot. 6, is ineffective.  Defendant's own exhibit shows that the letter was sent to 2K Games in this District.  Siegal Decl. Ex. A.  That Take-Two Interactive also was harmed by Defendant's letter does not change the jurisdictional analysis.  *See Yahoo!*, 433 F.3d at 1207 ("If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state.").

Cir. 2000).  In *Bancroft*, the declaratory judgment defendant sent a cease and desist letter to the declaratory judgment plaintiff, a company doing business in California, asserting trademark infringement.  *Id.* at 1088.  The Ninth Circuit held that, by sending the letter, the defendant purposefully directed its activities at California as the defendant (1) intentionally sent the letter to California, (2) expressly aimed its conduct at the commercial relationships of a California company, and (3) caused effects it knew were felt in California.  *Id.*; *see also Way.com, Inc. v. Singh*, No. 3:18 Civ. 4819, 2018 WL 6704464, at *8 (N.D. Cal. Dec. 20, 2018) (harm to California-based plaintiff in copyright action met requirement that "the *defendant's* actions connect him to the *forum*") (quoting *Walden v. Fiore*, 571 U.S. 277, 289 (2014)).  Thus, Defendant's letter, which impairs Plaintiffs' rights, supports finding the first prong satisfied.  *See Elec. Frontier Found. v. Glob. Equity Mgmt. (SA) Pty. Ltd.*, 290 F. Supp. 3d 923, 937–39 (N.D. Cal. 2017) (demand letter requiring that California-based plaintiff perform demand in California was "expressly aimed" at California and effects were felt in California); *Flipboard, Inc. v. Amorphous*, No. 15 Civ. 3255, 2015 WL 8482258, at *6 (N.D. Cal. Dec. 10, 2015) (denying motion to dismiss based on purposeful direction created by declaratory judgment defendant's cease and desist letters); *see also Way.com*, 2018 WL 6704464, at *8 (correspondence with California address showed that defendant "knew that the harm its actions caused would be suffered by a California company").

Consistent with the precedent established by *Bancroft* and numerous other cases, personal jurisdiction is proper here as Defendant sent demand letters to 2K Games in this District asserting that (a) Plaintiffs violated his copyrights by using the dance step in their video game without authorization and (b) Plaintiffs copied the dance step because it had become popular as the direct result of the rapper Soulja Boy and Defendant having performed it before live audiences.  Siegal Decl. Ex. C, at 2. Defendant admits that one such performance in which he personally participated took place on August 13, 2009 "at the Oracle Arena in Oakland, California" as part of Soulja Boy's concert tour.  Sims Decl. ¶ 11; Compl. ¶ 14.

Those contacts alone are enough to show purposeful direction for purposes of establishing specific jurisdiction, but the evidence suggests those are not Defendant's only California contacts. Notably, the tour's other stops included 14 locations in California—the most of any state on the two-

year arena tour—including performances in Oakland, San Jose, Mountain View, and Concord in this District, none of which Defendant mentions. *See* Declaration of Dale M. Cendali, dated August 11, 2020 ("Cendali Decl.") ¶ 2. If Defendant's dance step "is an essential part of the Soulja Boy performance," as Defendant claimed in his demand letters, *see* Siegal Decl. Ex. A, at 1, and Defendant "toured with him [Soulja Boy]" performing the dance step at "live concert performances," *id.* Ex. C, at 2, it is a plausible inference that he accompanied Soulja Boy on each stop of the tour, marketing, promoting, and performing the dance step to California residents. As the performances were in California and Defendant asserts that these live performances were the reason the dance step was "attractive" for Plaintiffs to allegedly copy, *id.*, these multiple tour stops further establish purposeful direction. *See Wake Up & Ball LLC v. Sony Music Entm't Inc.*, 119 F. Supp. 3d 944, 950 (D. Ariz. 2015) (showing music video at release party and promoting live performances constituted purposeful direction); *see also Richardson v. Kharbouch*, No. 19 Civ. 2321, 2020 WL 1445629, at *4 (N.D. Ill. Mar. 25, 2020) (performance of work at issue for paying in-state audiences would support minimum contacts as to claim based on that work).

    ***Second***, as to whether Defendant's activities in the forum "give rise to the current suit," the Ninth Circuit applies a "but for" causation test. *Bancroft*, 223 F.3d at 1088. In *Bancroft*, the test was satisfied because the declaratory judgment plaintiff would not have needed to sue for "a judicial declaration of its right to use" its website name absent the declaratory judgment defendant's letter. *Id.* Similarly, here, Defendant's letters, sent to 2K Games in this District, created a cloud over *NBA 2K* that this lawsuit is intended to clear. Compl. ¶ 1. And, Defendant's letters made clear that he believed that his performances with Soulja Boy (many in California) were the reason Plaintiffs allegedly copied his dance step. Siegal Decl. Ex. C. As a result, this prong is satisfied. *See also Flipboard*, 2015 WL 8482258, at *7 (absent declaratory judgment defendant's letter, declaratory judgment plaintiff "would not have felt the need to file this declaratory action"); *see also Bancroft*, 223 F.3d at 1088 (but for demand letter, "it is clear [declaratory judgment plaintiff] would have no need for a judicial declaration of its right to use [domain name]"). Indeed, Defendant fails to address this prong meaningfully in his motion, thus effectively conceding it. *See* Mot. 6.

**Third**, "[o]nce a plaintiff has met its burden on the first two prongs of the specific personal jurisdiction inquiry, the burden shifts to the defendant to show why the exercise of jurisdiction would not be reasonable and fair." *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 963 (N.D. Cal. 2015). The Supreme Court has held that this factor must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *Groupion, LLC v. Groupon, Inc.*, No. 11 Civ. 870, 2012 WL 2054993, at *6 (N.D. Cal. June 5, 2012) (White, J.) (same). When the seven factors courts consider in making this determination are analyzed, *Groupion*, 2012 WL 2054993, at *6, Defendant has not established such manifest unreasonableness:

1. As to "the extent of the defendant's purposeful interjection into the forum state," Defendant argues that he "has not purposefully interjected himself into the forum," Mot. 6, but this factor is "analogous to the purposeful availment and purposeful direction analysis." *Groupion*, 2012 WL 2054993, at *6. Thus, by satisfying the first and second specific jurisdiction prongs, *see supra* 4, this factor supports the reasonableness of exercising jurisdiction.

2. As to "the burden on the defendant in defending in the forum," Defendant conclusorily states that, as a Georgia resident, he will be burdened by "expense, inconvenience, and [the] health hazard of travelling to California." Mot. 6. This argument fails for multiple reasons. **First**, Defendant admits that he is a musician and performer, who has appeared "at live performances and in music videos," *id*. at 2, including a concert tour with at least one stop in this District during which he performed the dance step at issue in this litigation, Sims Decl. ¶ 11. Defendant cannot claim a burden in litigating a case that he caused by sending a cease and desist letter into this District, when his own professional career has involved significant travel, including into this District. *See RHUB Commc'ns, Inc. v. Karon*, No. 16 Civ. 6669, 2017 WL 3382339, at *8 (N.D. Cal. Aug. 7, 2017) (past travel to California supported reasonableness of exercise of personal jurisdiction); *PlayVision Labs, Inc. v. Roberts*, No. 12 Civ. 171, 2012 WL 13069775, at *5 (N.D. Cal. Aug. 8, 2012) (White, J.) (defendant's travel

to California "for business and personal reasons . . . undermines any suggestion that it would be a burden to him to defend against the claims in this forum"). **Second**, Defendant has not established how the expense of litigating in California would be higher than litigating in Georgia. 2K Games is based in California, Brody Decl. ¶¶ 2–4, Compl. ¶ 9, and thus any depositions of it or its employees would occur here regardless. *See Astra Mfg., Inc. v. Jack Rockwell LLC*, No. 08 Civ. 6153, 2009 WL 10671434, at *6 (C.D. Cal. Feb. 11, 2009) (personal jurisdiction reasonable as "depositions will be conducted where the relevant witness resides and discovery will not be affected by venue"). Likewise, Plaintiffs are willing to come to Georgia for Defendant's deposition. Any other pre-trial discovery or hearings likely will occur remotely, particularly given the ongoing restrictions related to the COVID-19 pandemic. Indeed, even the depositions may be conducted remotely due to the pandemic. *See* General Order No. 72-5 (July 23, 2020); *see also BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*, No. 19 Civ. 5216, 2020 WL 3893563, at *6 (D. Ariz. July 10, 2020) (denying motion to dismiss for lack of personal jurisdiction, noting "[i]n the era of COVID-19, both the judiciary and advocates alike have learned and adapted to ever-changing circumstances to ensure that due process and justice withstand"). In any case, this will not be an inconvenience for Defendant's California-based lawyer, Mr. DeClercq. *See Facebook, Inc. v. ConnectU LLC*, No. 07 Civ. 1389, 2007 WL 2326090, at *7 (N.D. Cal. Aug. 13, 2007) (personal jurisdiction reasonable where "so long as [defendant] is represented by counsel the financial burdens to him of defending this action would likely be much the same in [alternative forum] as in this forum"). Thus, Defendant has not made a compelling case on the second factor. *See Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) (reversing dismissal for lack of jurisdiction and finding that, given "the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past").

3. As to "the extent of the conflict with the sovereignty of the defendant's state," Defendant admits that "there is no conflict between California and Georgia." Mot. 6. Thus, this factor

also supports a finding of reasonableness.  *Menken*, 503 F.3d at 1060 (reasonable where there was no conflict).

4.  As to "the forum state's interest in adjudicating the dispute," Defendant again relies on his Georgia residence, but he admits that 2K Games "has its principal place of business in California."  Mot. 6.  Contrary to Defendant's characterization of this as a "weak interest," the Ninth Circuit, in a case cited by Defendant (at 6), held that a state has "a strong interest in protecting its residents . . . and in providing a forum for relief."  *Menken*, 503 F.3d at 1060.  Indeed, this Court specifically has held that "California has an interest in protecting companies which conduct business there."  *Groupion*, 2012 WL 2054993, at *7; *Flipboard*, 2015 WL 8482258, at *7 (this District "has an interest in adjudicating" disputes involving California corporations).  Thus, this factor strongly weighs in favor of reasonableness.

5.  As to "the most efficient judicial resolution of the controversy," Defendant claims that this factor is "neutral" because "both the Northern District of California and the Northern District of Georgia could hear this case," Mot. 7, but this factor is primarily decided based on "where the witnesses and the evidence are likely to be located."  *Menken*, 503 F.3d at 1061.  Defendant ignores this, which is a tacit admission of reasonableness.  Moreover, 2K Games' many employees are based in or managed from this District, including 2K Games' Vice President of Global Marketing and corporate representative, Alfredo Brody, and 2K Games' relevant files also are located in this District.  Brody Decl. ¶¶ 1, 3–4.  Thus, this factor supports reasonableness.  *See Flipboard*, 2015 WL 8482258, at *7 (reasonable where plaintiff's "relevant records and systems, as well as all key Plaintiff witnesses, are located or managed in" this District).

6.  As to "the importance of the forum to the plaintiff's interest in convenient and effective relief," Defendant does not dispute that this District would be more convenient for Plaintiffs.  Mot. 7.  Nor could he as 2K Games has its principal place of business here, its employees, and its files.  Brody Decl. ¶¶ 3–4.  Thus, this factor supports reasonableness.  *See Bacchus Mgmt. Grp., LLC v. Talisker Canyons (WA DAKOTA), LLC*, No. 11 Civ. 987, 2011 WL

13243723, at *6 (N.D. Cal. Aug. 2, 2011) (White, J.) ("[T]here is no question that California is the most convenient forum for [plaintiff], a company with its principal place of business in San Francisco.").

7.  The "existence of an alternative forum," is relevant "only when the forum state is shown to be unreasonable." *Bacchus Mgmt. Grp.*, 2011 WL 13243723, at *6 (quoting *Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 791 (9th Cir. 1987)).  Here, because Defendant has not demonstrated that the exercise of jurisdiction of him would be unreasonable, this factor is "irrelevant."  *Id.*  Further, Defendant again relies on his Georgia residence, as well as asserting without factual support that other witnesses may be based in Atlanta.  Mot. 7. Without factual support, this Court cannot credit Defendant's attorney argument.  *See Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11 Civ. 2460, 2011 WL 2607158, at *7 (N.D. Cal. July 1, 2011) ("[I]n order to satisfy their burden to present a 'compelling case' against jurisdiction, Defendants must do more than simply claim, without elaboration, that litigation in a distant [forum] presents an unreasonable burden."); *Aussie Pet Mobile, Inc. v. Benton*, No. 09 Civ. 1407, 2010 WL 2629556, at *4 (C.D. Cal. June 28, 2010) (rejecting unreasonableness of personal jurisdiction where "notably absent from Defendants' papers . . . is any evidence to support these statements").  Nor can Defendant remedy his failure of proof in reply.  *See Groupion LLC v. Groupon, Inc.*, No. 11 Civ. 870, 2012 WL 3025711, at *3 n.3 (N.D. Cal July 24, 2012).

When the reasonableness factors are weighed together, Defendant has not made a "compelling case that the exercise of jurisdiction would not comport with fair play and substantial justice and would thus be unreasonable." *See Menken*, 503 F.3d at 1061.  Accordingly, this Court has specific jurisdiction over Defendant.[2]

\* \* \*

---

[2]  Defendant's discussion of general jurisdiction, Mot. 5, is irrelevant given that specific jurisdiction exists in this case.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

**CASE NO. 4:20-CV-4441-JSW**

1     If this Court still questions its jurisdiction to hear this case, Plaintiffs request the opportunity to

2  conduct limited jurisdiction discovery.  As this Court has stated, it "has broad discretion in determining

3  whether to permit jurisdictional discovery." *Gilbert v. Bank of Am.*, No. 13 Civ. 1171, 2014 WL

4  4748494, at *6 (N.D. Cal. Sept. 23, 2014) (White, J.) (granting jurisdictional discovery and reserving

5  ruling on motion to dismiss); *Heller v. Cepia, L.L.C.*, No. 11 Civ. 1146, 2012 WL 13572, at *13 (N.D.

6  Cal. Jan. 4, 2012) (White, J.) (same).[3]  Here, Defendant admits that he performed a concert in this

7  District, Sims Decl. ¶ 11, but notably does not disclose the other stops in that concert tour, or the other

8  California arena venues in the tour.  Cendali Decl. ¶ 2; *see Richardson*, 2020 WL 1445629, at *4

9  (granting jurisdictional discovery where allegations "suggest that [defendant] has performed the song in

10  this District").  Nor does he discuss his musical career, including whether he has sold albums into

11  California, or any other information concerning his professional activities that may be directed at

12  California.  Likewise, he does not refer to any online views, sales, or promotions from California

13  audiences, despite his assertion that the dance step's "phenomenon" began because of a video he

14  uploaded to the Internet, resulting in Defendant touring at least one California arena within mere months

15  of his video's stated publication date.  Siegal Decl. Ex. A, at 2; *id.* Ex. C, at 2.  Although Plaintiffs

16  believe they already have presented sufficient grounds to evidence jurisdiction over Defendant, they

17  respectfully request permission to conduct discovery into these and other related issues concerning

18  Defendant's contacts should the Court hesitate to allow the case to move forward in this District.

19          **B.**     **Venue Is Proper In this District and a Discretionary Transfer Is Not Appropriate**

20     Defendant also argues that venue is improper, Mot. 7–8, but for copyright claims, venue is

21  proper "in the district in which the defendant or his agent resides or may be found."  28 U.S.C. §

22  1400(a).  "The Ninth Circuit interprets this statutory provision to allow venue 'in any judicial district in

23  which the defendant would be amenable to personal jurisdiction if the district were a separate state.'"

24  _____

3       Although this Court reserved ruling on the motions in the above-cited cases, it should deny
25    Defendant's motion here.  In *Gilbert*, the plaintiff sought to base personal jurisdiction on a contract
    theory, but did not allege that the contracts were negotiated or entered into in California.  2014 WL
26    4748494, at *6.  In *Heller*, the plaintiff sought to tie personal jurisdiction over two defendants in part
    to the allegedly tortious conduct of a third defendant, but did not plausibly show that they had a
27    business relationship at the time of the alleged tort.  2012 WL 13572, at *13.  Here, there is only one
    defendant, and Plaintiffs have plausibly alleged specific conduct directed at California.

28

*Brayton*, 606 F.3d at 1128.  Defendant does not raise independent arguments with regard to his improper venue argument.  Mot. 8.  Thus, as the evidence supporting personal jurisdiction occurred in or relates to the Northern District of California, *see supra* 4–11, venue is proper.  *Brayton*, 606 F.3d at 1126 (holding that venue was proper because the defendant "would be subject to personal jurisdiction in the Northern District of California if it were treated as a separate state").

Apparently recognizing that venue is proper in this District, Defendant asks this Court to grant a discretionary transfer to the Northern District of Georgia.  Mot. 8.  In making his motion to transfer, Defendant "bears the burden of showing the inconvenience of litigating in this forum favors transfer." *See Enger v. Allstate Ins. Co.*, No. 16 Civ. 136, 2016 WL 10829363, at *1 (N.D. Cal. Apr. 5, 2016) (White, J.) (denying motion to transfer); Mot. 8.  *Lueck v. Sundstrand Corp.*, on which Defendant relies (at 9), explains that this is a "heavy burden of proof."  236 F.3d 1137, 1143 (9th Cir. 2001).[4]  To determine whether a defendant has met his burden, courts consider six factors.  *See Enger*, 2016 WL 10829363, at *2.[5]

1. As to "the plaintiff's choice of forum," this Court gives it "great deference" that "should only be disturbed if the defendant can show that other factors clearly favor a different forum." *Pension Plan for Pension Tr. Fund for Operating Eng'rs v. ACME Concrete*, No. 12 Civ. 4410, 2012 WL 12899098, at *3 (N.D. Cal. Nov. 1, 2012).  Defendant does not address this factor, tacitly conceding that it heavily weighs against transfer.

2. As to "the convenience of the parties and the witnesses," multiple considerations weigh against transfer.  ***First***, Defendant relies on his residing in Georgia, Mot. 9, but "merely trying to shift the inconvenience of litigating this action from [Defendant] to Plaintiffs" is insufficient.  *Pension Plan*, 2012 WL 12899098, at *3.  ***Second***, 2K Games, its witnesses,

---

[4]  *Lueck* is otherwise distinguishable because the necessary evidence was under the control of the New Zealand government such that the district court could not compel its production, and because the plaintiffs were maintaining a parallel suit in New Zealand on the same facts.  236 F.3d at 1147.

[5]  Defendant relies on a different listing of the relevant factors.  Mot. 9.  The factors are the same but Defendant's list separates them out.  Thus, for this Court's convenience, Plaintiffs use the factors in Your Honor's *Enger* decision.  2016 WL 10829363, at *2 (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000)).

and its files are located in this District.  Brody Decl. ¶¶ 3–4; *see Invisible Stripes, LLC v. Virag*, No. 09 Civ. 1133, 2009 WL 1992125, at *4 (N.D. Cal. July 8, 2009) (White, J.) (factor weighed against transfer as "Plaintiff's place of principal business as well as all of its officers and witnesses are present in" this District).  Thus, as discussed above, even if this case were transferred, Defendant would be required to take depositions in this District,[6] and much of the remaining pre-trial activity can be conducted remotely.  *See supra* 7.  **Third**, although Defendant refers to witnesses that "are likely to reside in the Northern District of Georgia," Mot. 9, or that it would be difficult to secure for trial, Mot. 10, he does not identify who those witnesses are, where they are located, what their testimony would be, or how they would be inconvenienced.  This is insufficient to satisfy Defendant's burden.  *See Pension Plan*, 2012 WL 12899098, at *3 (denying transfer motion where defendant did "not describe who" third-party witnesses would be "or what type of testimony they would provide" and finding that "existence of several non-party witness [sic] is insufficient to overcome the deference provided to Plaintiffs' choice of forum"); *Bacchus*, 2011 WL 13243723, at *9 (denying transfer where defendant did not "inform the Court 'as to who the witnesses are, where they are located, what their testimony will be, and why their testimony is relevant'").  As the "party seeking a transfer cannot rely on vague generalizations as to the convenience factors," this factor does not support transfer.  *Bacchus*, 2011 WL 13243723, at *9; *Virag*, 2009 WL 1992125, at *4 (factor weighed against transfer where plaintiff did not "specify any particular witnesses").[7]

3.  As to the "ease of access to evidence," Defendant conclusorily states that the evidence regarding the development of his dance step is based in Georgia, Mot. 10, but again does not

---

[6]  Although Defendant suggests that Take Two Interactive's witness "will have to travel regardless of venue," Mot. 10, Take Two Interactive currently anticipates that its company representative will be Alfredo Brody, who is located in this District.  Brody Decl. ¶ 4.

[7]  Defendant conclusorily states that a judgment would be less enforceable because "Defendant lives in Georgia and only one of two Plaintiffs lives in California," Mot. 10, but he does not explain how the residence of the parties relates to enforcing a judgment.  If anything, enforceability would support keeping this case where one of the declaratory judgment plaintiffs reside.

explain what that evidence is.  When a party "does not provide any evidence to support [its] argument," this factor "weighs against transfer."  *Eureka Inventions, LLC v. Bestway (USA), Inc.*, No. 15 Civ. 701, 2015 WL 3429105, at *3 (N.D. Cal. May 27, 2015) (White, J.) (denying transfer motion); *Do v. Hollins Law, P.C.*, No. 3:13 Civ. 1322, 2013 WL 3703405, at *3 (N.D. Cal. July 12, 2013) (White, J.) (factor weighed against transfer where defendant did "not identify what that evidence [was]" and even if it had, "advances in technology have made it easy for documents to be transferred to different locations," further weighing this factor against transfer).  In any case, Plaintiffs' evidence concerning the creation of *NBA 2K* and the dance celebration that Defendant accused Plaintiffs of infringement are based in this District.  Brody Decl. ¶ 3.  Thus, this factor does not support transfer.

4. As to "any local interest in the controversy," Defendant argues that Georgia has a large percentage of rap artists and, thus, an interest in this suit.  Mot. 10.  The only cited support for his argument is a six-paragraph promotional post for A3C, an Atlanta-based rap festival.  *Id.*  In addition to being unreliable because A3C has an interest in portraying Atlanta as a rap hub, the post says nothing about this District's relative interest in this dispute.  Defendant's silence on this issue is telling given that this District has produced famous rappers, including well-known rapper Tupac Shakur.  Brody Decl. ¶ 6.  Moreover, Defendant has failed to address the fact that this District is the home to numerous video game companies and other content creators, which would have similar interest in a lawsuit concerning whether an unoriginal and unprotectable dance step can be used in their works.  *Id.* ¶ 7.  Thus, this factor does not support transfer.

5. As to "the familiarity of each forum with the applicable law," Defendant asserts that the factor is "neutral" because all U.S. courts "are familiar with federal copyright and declaratory judgment law."  Mot. 10.  That does not appear to be true.  According to LexMachina, a litigation data company, from 2009 to August 10, 2020, this District has heard 2,050 copyright cases.  Cendali Decl. ¶ 3.  By contrast, the Northern District of Georgia has heard 589.  *Id.*  Similarly, a search of Westlaw's Federal Copyright Cases database returned 999

Northern District of California decisions, and only 223 Northern District of Georgia

decisions.  *Id.*  Thus, this factor weighs against transfer or, by Defendant's own concession,

is at best neutral.

6.   As to "the relative congestion and time of trial in each forum," Defendant states that the

factor is "neutral," Mot. 10, but as he has not presented evidence supporting transfer, "he has

not met its evidentiary burden to show transfer is warranted."  *Do*, 2013 WL 3703405, at \*3.

As no interest of justice factors support transferring this case to the Northern District of Georgia,

Defendant's motion should be denied.[8]

## C.    The Parties' Controversy Is Justiciable

Defendant's final argument seeking to avoid resolution of the parties' dispute is that there is no

actual case or controversy because Defendant's cease and desist letters did "not threaten litigation or

immediate action."  Mot. 10.  Defendant's lead case in support of that proposition is *Hal Roach Studios*

*v. Richard Feiner & Co.  See id.* at 11–12 (citing 896 F.2d at 1555).  Yet, that case actually shows why

the parties' dispute is justiciable.

As the Ninth Circuit explained, the "purpose of the Declaratory Judgment Act is 'to relieve

potential defendants from the Damoclean threat of impending litigation which a harassing adversary

might brandish, while initiating suit at his leisure—or never.'"  *Hal Roach*, 896 F.2d at 1555 (quoting

*Societe de Conditionnement v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1981)).  "To establish that

a particular declaratory action presents an actual case or controversy, a party is required to show that,

under all the circumstances of the case, there is a substantial controversy between parties having adverse

legal interests, and the controversy is of sufficient immediacy and reality to warrant declaratory relief."

*Id.*  In *Hal Roach*, the Ninth Circuit found a justiciable controversy because the declaratory judgment

counter-defendant sent a letter indicating that the declaratory judgment counterclaimant's license

"would expire" and thereafter it "would have no rights of any kind or character" to the work at issue.  *Id.*

at 1556.  The letter, as well as the DJ counter-defendant's failure to indicate "that it will *not* institute an

---

[8]   Defendant's discussion of whether this action could have been filed in the Northern District of
Georgia, Mot. 8–9, is irrelevant given that the interests of justice do not support a transfer.

infringement action," were sufficient to give the DJ counterclaimant "a 'real and reasonable apprehension' that it would be the subject of an infringement action if it continued with its use" of the work.  *Id.*  Thus, the Ninth Circuit found the "'case or controversy' suitable for declaratory relief."  *Id.*[9]

The existence of a case or controversy is even more evident here.  Defendant sent a letter to Plaintiffs identifying his dance step, and stating that their "use of the Work is without authorization." Sims Decl. Ex. A, at 1.  The letter goes on to say that "Take-Two's use of our client's Work is without authority, permission, or license, and is in violation of our client's exclusive rights under the United States Copyright Act."  *Id.* at 2.  Then, it states that "the unauthorized use of the Work violates Mr. Sims's exclusive rights as the copyright owner under 17 U.S.C. § 106, and constitutes copyright infringement pursuant to 17 U.S.C. § 501."  *Id.*  And it ends by stating that "Mr. Sims will take all steps available at law and in equity to protect his exclusive rights under copyright."  *Id.*  Moreover, after Plaintiffs responded to the letter explaining that an individual dance step is not copyrightable, Defendant wrote again to "reiterate" that "Mr. Sims is the owner of the copyright" and that Plaintiffs "misappropriated the Work."  Sims Decl. Ex. C, at 1.  The second letter also states that Plaintiffs "created an unauthorized derivative work" and concludes by reserving all rights.  *Id.* at 2.

Defendant's assertions of infringement are even more acute than those in *Hal Roach*.  By asserting that Plaintiffs' use was unauthorized and infringing, Defendant created an actual case and controversy between the parties warranting resolution by this Court.  *See E. & J. Gallo Winery v. Proximo Spirits, Inc.*, 583 F. App'x 632, 635 (9th Cir. 2014) (cease and desist letter created "apprehension of suit"); *Societe de Conditionnement*, 655 F.2d at 944 (apprehension "need not be substantial" when "plaintiff is engaged in the on-going manufacture of the alleged" infringing item).

---

[9]   *M.D. Beauty, Inc. v. Dennis F. Gross, M.D., P.C.*, on which Defendant also relies (at 12), further supports finding a controversy here.  In that case, the California defendant had filed a declaratory judgment lawsuit in New York, and the California plaintiff subsequently filed a trademark lawsuit in California.  No. 03 Civ. 3082, 2003 WL 24056263, at *2 (N.D. Cal. Oct. 27, 2003).  The California defendant moved to dismiss the California action under the first-to-file rule.  *Id.*  The court granted the motion, holding (as here) that the California plaintiff's letters created an actual case or controversy between the parties, making the New York action non-anticipatory.  *Id.* at *5.

Thus, Plaintiffs' filing of this lawsuit seeking a declaration that they have not infringed Defendant's rights was entirely appropriate, and the dispute between the parties is justiciable.[10]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendant's motion be denied.  In the alternative, as discussed above, Plaintiffs respectfully request jurisdictional discovery from Defendant.  *See supra* 11.

---

[10] Although Defendant tries to argue that the letter scrupulously avoided asserting that he would sue Plaintiffs, Mot. 10, a letter need not "contain an express threat that defendant would sue, or any other formulaic words, to create an actual controversy."  *Coheso, Inc. v. Can't Live Without It, LLC*, No. 17 Civ. 3381, 2017 WL 10434396, at *5 (N.D. Cal. Dec. 18, 2017).  Indeed, no allegation that a lawsuit was forthcoming was presented in *Hal Roach*.  896 F.2d at 1556 (discussing licensing); *Am. Honda Motor Co. v. Coast Distrib. Sys., Inc.*, No. 06 Civ. 4752, 2007 WL 47258, at *4 (N.D. Cal. Jan. 5, 2007) (justiciable controversy based on cease and desist letter despite letter "not stat[ing] explicitly that Honda would sue Coast").

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

17

**CASE NO. 4:20-cv-4441-JSW**

DATED: August 11, 2020                Respectfully submitted,

                                      /s/ Dale M. Cendali
                                      Dale M. Cendali (S.B.N. 1969070)
                                      dale.cendali@kirkland.com
                                      Joshua L. Simmons (admitted *pro hac vice*)
                                      joshua.simmons@kirkland.com
                                      Ari Lipsitz (admitted *pro hac vice*)
                                      ari.lipsitz@kirkland.com
                                      KIRKLAND & ELLIS LLP
                                      601 Lexington Avenue
                                      New York, NY 10022
                                      Telephone: +1 212 446 4800
                                      Facsimile: +1 212 446 4900

                                      Diana M. Torres (S.B.N. 162284)
                                      diana.torres@kirkland.com
                                      KIRKLAND & ELLIS LLP
                                      2049 Century Park East
                                      Los Angeles, CA 90067
                                      United States
                                      Telephone: +1 310 552 4200
                                      Facsimile: +1 310 552 5900

                                      *Attorneys for Plaintiffs*