UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAKE-TWO INTERACTIVE SOFTWARE, INC. and 2K GAMES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>BRANDON SIMS,<br><br>Defendant. | Case No. 20-cv-04441-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**<br><br>Re: Dkt. No. 22 |

Now before the Court for consideration is the motion to dismiss, or, in the alternative, to transfer venue filed by Defendant Brandon Sims ("Sims"). Having reviewed the parties' papers, relevant legal authority, and record in this case, the Court hereby GRANTS, IN PART, AND DENIES, IN PART Sims's motion.

**BACKGROUND**

In 2018, Plaintiffs Take-Two Interactive Software, Inc. ("Take-Two") and 2K Games, Inc. ("2K Games") (collectively "Plaintiffs") released *NBA 2K19*, a basketball simulation game that allows a user to play virtual basketball. Take-Two is a multinational publisher, developer, and distributor of video games and video game peripherals, incorporated in Delaware and headquartered in New York. (Compl. ¶ 8.) 2K Games is a wholly owned subsidiary of Take-Two, incorporated in Delaware and headquartered in Novato, California. (*Id.* ¶ 9.)

*NBA 2K19* realistically depicts numerous NBA players playing a simulated basketball game. A user may even customize the celebratory dance a basketball player performs upon making a point in the game. This case arises from a copyright dispute about the "Soul Jah Boi," a celebratory dance used in *NBA 2K19*, between Plaintiffs and Sims, who is a music artist, also

1

known as "Lil Playboii." (Compl. ¶¶ 10, 20.) Sims resides in Lithonia, Georgia. (Dkt. No. 26-1, Reply Declaration of Brandon Sims ("Sims Reply Decl.") ¶ 3.) In 2011, Sims obtained a copyright to his dance routine "Crank That Dance," which is performed to the song "Crank That (Soulja Boy)." (Compl. ¶ 21, Ex. 2.)

"Crank That Dance" is approximately 82-seconds long and is comprised of a variety of dance moves, including what Plaintiffs describe as the "Sims Dance Step." (*Id.* ¶¶ 22-23.) The "Sims Dance Step" is performed by slightly bending one's legs while simultaneously raising the arms upwards until they are perpendicular to the dancer's chest. Once in this position, the dancer bounces backward while making a cranking-like gesture with clenched fists, evoking the cranking gesture of a motorcycle throttle. This move takes approximately one second to perform and appears at least four times in "Crank That Dance." (*Id.* ¶¶ 6, 22-24.) The "Soul Jah Boi" is performed by making a lateral motion to the side four times. During this motion, one leg is straight on the ground, and the other leg is stretched outward at a 45-degree angle. At the same time, the basketball player raises both arms outward in front of his head. (*Id.* ¶ 6.)

Following *NBA 2K19*'s release, Sims sent Jason Argent, Senior Vice President of Operations at 2K Games, a cease and desist letter to 2K Games's headquarters in Novato, California. (Dkt. No. 22-2, Declaration of Bruce B. Siegal ("Siegal Decl.") ¶ 4, Ex. A.) Take-Two also is listed as a recipient of the letter. (*Id.*) Sims, through his counsel, notified Plaintiffs that he owned the copyright to "Crank That Dance" and asserted that Plaintiffs' use of the "Soul Jah Boi" infringed that copyright. (*Id.*) Sims also stated he "has vigorously enforced against unauthorized use of ["Crank That Dance"]." (*Id.*) Sims demanded that Plaintiffs obtain a license to use his copyrighted work and stated that he was entitled payment for any past unauthorized use. (*Id.*) Sims asserted that if an amicable resolution could not be reached, he would "take all steps available at law and in equity to protect his exclusive rights under copyright and otherwise." (*Id.*)

Over a month later, Plaintiffs responded to Sims's letter. Plaintiffs denied that the "Soul Jah Boi" infringed on Sims's copyright and refused Sims's demands. (Siegal Decl., ¶¶ 5-6, Ex. B.) Over three weeks later, Sims sent a reply letter reiterating all the claims and demands he made in his first letter. Sims again reserved all rights and remedies available to him if a resolution could

1   not be reached.  (Siegal Decl., ¶¶ 7-8, Ex. C.)

2         Plaintiffs did not respond to Sims's second letter.  Instead, they filed this lawsuit seeking a declaratory judgment against Sims.  They ask the Court to declare that the "Soul Jah Boi" does not infringe Sims's copyright.  Sims moves to dismiss Plaintiffs' claim on three grounds.  First, he argues the Court lacks personal jurisdiction.  Second, he argues this District is an improper venue and, in the alternative, seeks a transfer to the United States District Court for the Northern District of Georgia  Third, he argues this case is not justiciable under the Declaratory Judgment Act.

## ANALYSIS

**A.  This Case is Justiciable Under the Declaratory Judgment Act.**

      The Declaratory Judgment Act permits a court to "declare the rights and other legal relations" of parties to an "actual case or controversy."  28 U.S.C. § 2201(a).  "[T]he phrase a case of actual controversy refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  If there is no "case or controversy" the Court would lack jurisdiction over this matter.  For that reason, the Court addresses this argument first.

      "To determine whether a declaratory judgment action presents a justiciable case or controversy, courts consider 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Shell Gulf of Mex. Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  The Court must determine whether Plaintiffs have "a real and reasonable apprehension that [they] will be subject to liability" for their conduct.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir. 1989) (quoting *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1981)).

      Sims argues the case is not justiciable because the cease and desist letters simply invited Plaintiffs to license his work and did not threaten litigation.  The Court disagrees.  Here, Sims contends he is the owner of a copyrighted work.  In his first letter to Plaintiffs, Sims asserted that

3

interest, noted his "vigorous" enforcement of unauthorized uses, and stated his belief that Plaintiffs' use was not authorized and infringed his copyright. (Siegal Decl., Ex A.) While it is true he invited Plaintiffs to obtain a license, he nevertheless stated: "Please be aware that if an amicable resolution of this matter is not reached in an efficient and expedient manner, [he would] take all steps available at law and in equity to protect his exclusive rights under copyright and otherwise." (*Id.*) In response to Plaintiffs' letter, Sims reiterated his copyright ownership and claimed copyright infringement. (*Id.*, Ex. C.) He again reserved his right to sue. (*Id.*)

These facts demonstrate that Sims's letters left Plaintiffs apprehensive about an impending lawsuit for their usage of the "Soul Jah Boi" in *NBA 2K19*. That Sims actually owns a copyrighted work and has a legal right to sue for copyright infringement further strengthens this finding. *Compare Shahani v. Moctezuma*, No. 16-cv-03862-JSC, 2017 WL 264063, at *2 (N.D. Cal. Jan. 20, 2017) (finding no justiciable controversy and, thus, no reasonable apprehension of suit where the defendant did not own a copyright). Nor does the Court find it dispositive that Sims did not explicitly threaten litigation. Sims's letters "did not need to contain an express threat that [he] would sue, or any other formulaic words to create an actual controversy, because the fact that [Sims] has not yet acted upon its veiled threat does not erase the threat's effect on" Plaintiffs. *Coheso, Inc. v. Can't Live Without It, LLC*, No. 17-cv-03381-LHK, 2017 WL 10434396, at *5 (N.D. Cal. Dec. 18, 2017) (internal quotations marks and citations omitted).

Accordingly, the Court concludes Plaintiffs' claim is justiciable under the Declaratory Judgment Act.

**B.      The Court Concludes Venue is Improper Because It Does Not Have Personal Jurisdiction over Sims.**

Sims moves to dismiss Plaintiffs' claims for lack of personal jurisdiction, under Federal Rule of Civil Procedure 12(b)(2), and for improper venue, under Rule 12(b)(3). In copyright cases, venue is proper "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). Section 1400(a) allows for venue "in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting

*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997)), *abrogated on other grounds by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). Therefore, the issue of whether venue is proper is coextensive with the inquiry into whether the Court has jurisdiction over Sims.

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). California's long-arm statute allows for the exercise of personal jurisdiction to the full extent under the United States Constitution, so the Court's "inquiry centers on whether exercising jurisdiction comports with due process." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015); *see also* Cal. Civ. Proc. Code. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").

Due process requires that a defendant have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Court's focus when evaluating personal jurisdiction is on the "nature and extent of 'the defendant's relationship to the forum state.'" *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.,* -- U.S. --, 141 S.Ct. 1017, 1024 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. --, 137 S. Ct 1773, 1779 (2017)); *see also Walden v. Fiore*, 577 U.S. 277, 290 (2014) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."). The strength of those contacts will determine whether a court can exercise general jurisdiction or specific jurisdiction. *Picot*, 780 F.3d at 1211; *cf. Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (stating court "must evaluate all of defendant's contacts with forum state" relating to the dispute in question). Because the Plaintiffs do not argue the Court has general jurisdiction over Sims, the Court limits its analysis to the issue of specific jurisdiction.

The Court may exercise specific jurisdiction over Sims if: (1) he purposefully directed his

activities at California or purposefully availed himself of California's laws; (2) Plaintiffs' claim arises out of or relates to Sims's activities in California; and (3) exercising jurisdiction would be reasonable. *Axiom Foods*, 874 F.3d at 1068. Plaintiffs bear the burden of proving the first two prongs. *Id.* If Plaintiffs meet their burden, "the burden then shifts to [Sims] to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* at 1068-69 (internal quotation marks omitted). The Court has decided the motion on the written record and without an evidentiary hearing. Therefore, Plaintiffs "need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).[1]

Because this case involves copyright infringement, the Court employs the purposeful direction test. *See Axiom Foods*, 874 F.3d at 1068. Under this test, Sims must have (1) committed an intentional act, (2) expressly aimed at California, (3) that caused harm he knew was likely to be suffered in California. *Id.* at 1069. Plaintiffs argue that Sims has the requisite contacts with this Court because he sent them two cease and desist letters and because he performed his copyrighted dance during a concert tour in 2009.

In general, "[a] cease and desist letter in and of itself is not sufficient to establish personal jurisdiction over the sender of the letter." *Yahoo!*, 433 F.3d at 1208. In some instances, however, a cease and desist letter may provide a basis for personal jurisdiction. *Id.* (citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)). For example, in *Bancroft & Masters*, the defendant sent the plaintiff a cease and desist letter regarding a domain name and sent a letter to the domain name registrar, which triggered a dispute resolution procedure that required the plaintiff take certain actions to protect its use of the disputed domain name. Accepting the plaintiff's allegations as true, the Ninth Circuit determined the defendant's actions "deliberately triggered [the] dispute resolution procedures not only to defend its own trademarks but also to interfere wrongfully with [plaintiff's] use of its domain name and misappropriate that name … for [the defendant's] own use." 223 F.3d at 1087. In contrast, in *Yahoo!*, the court

---

[1] Plaintiffs moved to take jurisdictional discovery in the event the Court was inclined to grant the motion. Based on the record presented, the Court denies Plaintiffs' request, which it concludes is "based on little more than a hunch" that discovery would "yield jurisdictionally relevant facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

6

distinguished the letters at issue in *Bancroft & Masters* and determined the defendants' letter was "more like a normal cease and desist letter" because it was not "abusive, tortious or otherwise wrongful." 433 F.3d at 1209. The court concluded that the letter, on its own, was not sufficient to provide the requisite minimum contacts with the forum. However, it held that the letter, combined with the fact that the defendants served the plaintiff with process and "obtained two interim orders from the French court directing Yahoo! to take actions in California, on threat of a substantial penalty" were sufficient to establish the requisite minimum contacts. Although the court described it as a "close question", the court held there was personal jurisdiction over the defendants. *Id.* at 1208-10.

Here, Sims sent his first cease and desist letter to Novato, California and sent the second to Plaintiffs' counsel in New York. Each letter is a run-of-the mill cease and desist letter designed to "warn an alleged rights infringer that its conduct, if continued, will be challenged in a legal proceeding, and to facilitate resolution of a dispute without resort to litigation." *Id.* at 1208. Indeed, Plaintiffs do not argue the letters are "abusive, tortious or otherwise wrongful" or that the letters triggered any enforcement or other proceedings. *Id.* at 1208; *see Bancroft & Masters*, 223 F.3d at 1089. Under *Yahoo!*, although the letters might literally satisfy each prong the effects test, standing alone they are not sufficient to provide the requisite minimum contacts with this forum. *Compare Trimble, Inc. v. Perdiemco LLC*, -- F.3d --, 2021 WL 1898127, at *7 (Fed. Cir. May 12, 2021) (finding that twenty-two communications to California plaintiff over three-month period was sufficient to provide specific jurisdiction over defendant in declaratory relief claim for patent non-infringement) *with PokitDok, Inc. v. Martin*, No. 12-cv-03947-SI, 2012 WL 5425615, at *4 (N.D. Cal. Nov. 6, 2012) (finding cease and desist letter simply alerted the plaintiff to the fact that defendant might file suit for copyright infringement and, without more, was not sufficient to establish personal jurisdiction in declaratory relief action).

Plaintiffs argue that the cease and desist letters combined with Sims's participation in concerts in California provide the requisite minimum contacts, and they note that Sims cited his performances with Soulja Boy to show why his work would have been "attractive to Take-Two." (Siegal Decl., Ex. C at 2.) Although the Court must consider all of Sims's contacts with

California, the Court is not persuaded. "When a court is exercising specific jurisdiction over a defendant, arising out of or related to the defendant's contacts with the forum, the fair warning that due process requires arises not at the time of the suit, but when the events that gave rise to the suit occurred." *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987) (internal quotations and citation omitted). Sims performed "Crank That Dance" during a tour in 2009, and he attests he has not been to California since 2010. (Sims Reply Decl., ¶¶ 4-5, 8.) *NBA 2K19* was not released until 2018. Although the proper focus is on Sims's contacts with California, his knowledge of Plaintiffs' presence here remains relevant to the analysis. *Axiom*, 874 F.3d at 1070. There is nothing to suggest that in 2009 Sims knew that 2K Games or Take-Two existed or knew that 2K Games was a California resident. *Cf. Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997) (finding no purposeful direction where defendant neither knew of the plaintiff's existence nor individually targeted it). In addition, these concert performances are not akin to the "veritable truckload of contacts" relating to the claims at issue in *Ford Motor*, 141 S.Ct. at 1031.

Accordingly, the Court concludes Plaintiffs have not met their burden to show that Sims has the requisite minimum contacts to subject him to personal jurisdiction or that venue is proper here. However, rather than dismissing the case, the Court concludes the interests of justice warrant transfer to the United States District Court for the Northern District of Georgia. *See* 28 U.S.C. section 1406(a); *PokitDok*, 2012 WL 5425615, at *4.

## CONCLUSION

For the foregoing reasons, the Court DENIES the motion to dismiss for lack of a justiciable controversy, GRANTS, IN PART, Sims's motion to dismiss for personal jurisdiction and improper venue and TRANSFERS this case to the United States District Court for the Northern District of Georgia. The Clerk shall close this file upon transfer.

**IT IS SO ORDERED.**

Dated: June 14, 2021

_____
JEFFREY S. WHITE
United States District Judge

8